In the matter of the application of JOHN S. MAXWELL, for letters testamentary, &c.

Filing a caveat against the probate of a will by one of the executors named therein, is not an implied renunciation of the executorship; and if the will be admitted to probate, letters testamentary may be granted to such executor.

An executor is not lightly, or by slight or indirect circumstances, to be precluded from the trust the testator intended to confide in him.

The granting of probate, and the issuing of letters testamentary to one or more of several executors, are not a bar or preclusion of the subsequent administration by the others.

It seems otherwise, at least by the practice of the English courts, where all the executors have refused to act, and administration has been granted.

Where a will is admitted to probate, an executor named therein, if capable in law, is not to be excluded unless he has by some act of his own deprived himself of the executorship.

If the decree of the court admitting the will to probate, direct that letters testamentary be issued to one of the executors, it will not preclude the subsequent granting of letters testamentary to the other executor.

Where a will has been admitted to probate by a decree of the prerogative court, it is neither requisite nor proper to insert in the oath of the executor the usual clause, that the will is the true last will and testament of the decedent.

APPLICATION to the ordinary for the granting of letters testamentary to John S. Maxwell, one of the executors named in the last will and testament of John Maxwell, deceased. The application being resisted, and the ordinary having been of counsel with one of the parties, the cause was heard before chief justice Ewing, who was called to sit with the ordinary on the hearing of the cause.

OPINION. A writing, purporting to be the will of John Maxwell, deceased, in which Elizabeth Maxwell his widow, and John S. Maxwell and William H. Sloan were named executors, having been offered to the surrogate of the county of Hunterdon for probate; a caveat was filed by several persons, among whom were the said John S. Maxwell and his wife, who was a descendant of

[In the matter of the application of John S. Maxwell for letters, &c.]

the deceased. This writing, upon an appeal in the prerogative court, was declared to be the last will and testament of John Maxwell, and was admitted to probate. During the pendency of these proceedings, Elizabeth Maxwell died. John S. Maxwell now claims to be admitted to take on himself the executorship, in common with William H. Sloan, the other surviving person named as executor.

In opposition to his application, it is insisted that he is precluded—first, By joining in the caveat; and secondly, By the terms of the decree of the prerogative court.

In the first place, then, let us examine the effect of the caveat. We are without precedent in the state of New-Jersey on this question, so far as either the information of the counsel who argued the case, or my own researches, extend.

Our means of information as to the practice and decisions in the ecclesiastical courts of England, are scanty and limited. Such as are within my reach have not furnished me with a specific rule or direct precedent, whereby our present inquiry may be enlightened or guided. Nor do the doctrines we meet with in the books on the topic of renunciation, afford any very satisfactory illustration by analogy.

It seems, however, to be well settled there, that, upon the decease of a person leaving a will, the executor named in it may voluntarily appear before the ordinary, or if he delays or neglects to do so, process may issue summoning him to appear and prove the instrument. If he fails to appear on the return of the process, he is punishable by excommunication for a contempt, and letters of administration with the will annexed will be granted. If he appears, he may accept the executorship, or refuse or renounce it. A renunciation, however, cannot be made by an act *in pais*, as, for instance, by a mere verbal declaration. To give it validity it must be done by some act, entered and recorded in the spiritual court. After such refusal, and administration with the will annexed thereupon granted, the party is incapable of assuming the executorship during the life-time of the administrator. After his death, however, the executor may retract his

renunciation, however formally made. But if administration is granted in consequence merely of his failure to appear on the process, he has power at any future time, even in the administrator's life, to come in and prove the will: *Toller on Ex.* 41; *Bacon's Ab. Ex'r, E.* 9.

In *Hensloe's case,* 9 *Co.* 37, it was held, that when many are named executors, and some of them refuse, and some of them prove the will, those who refuse may afterwards, at their pleasure, administer, notwithstanding this refusal before the ordinary; but if all refuse before the ordinary, and he commits administration to another, then they cannot afterwards administer. And like doctrine is there said to have been held as early as the Year Books.

In *House* v. *Petre,* before the delegates, reported in 1 *Salk.* 311, it was held by the common lawyers that where there are several executors, and one renounces before the ordinary, and the rest prove the will, he who renounces may, by the common law, at any time come in and administer; and though he never act during the life of his companions, he may come in and take on him the execution of the will after their death.

As already remarked, I am not aware that we can refer to any decisions of our own courts, to ascertain how far these rules have been recognized here. And I should certainly hesitate to adopt them in their full and literal extent, unless compelled by inflexible authority, if, by the term refusal, we are to understand an act of renunciation, such as is used in our testamentary courts. After an act of renunciation, it is a matter of course to admit as a witness in support of a will one who is named in it as executor. Yet this rule would be an extremely unsafe one, and we can scarcely suppose it would have been adopted, if he who has thus renounced may afterwards, the will being established, come in and act as executor. Without, however, deciding how far the English rules have been recognized, or are in force here, it may be said,

1. An executor is not lightly, or by slight or indirect circumstances, to be precluded from the trust the testator intended to confide in him.

2. The granting of probate, and the issuing of letters testamentary to one or more of several executors, are not a bar or preclusion of the subsequent administration by the others.

3. A different course of proceeding exists and is adopted, at least in the English courts, where one of several executors has taken the executorship, and where all have refused and an administration has been granted. And there is sufficient reason for the difference. If there is already one executor, and another comes into the executorship, he does not, as in the case of an administrator, abrogate all the powers, rights or duties of the other.

It may be safely said, that where a will is admitted to probate, an executor named therein, if capable in law, is not to be excluded, unless he has by some act of his own deprived himself of the executorship. His renunciation must be either express or implied. The caveat, in the present case, is clearly not an express or actual renunciation. It speaks no such language. Nor can it be deemed, as it appears to me, an implied renunciation. A renunciation is an act whereby a person, named in a will as executor, declines to take on himself the burthen of that office. The act is, therefore, predicated of an existing office. It presupposes the existence of the will. If no will has been made, there is no executorship to renounce. Nor until it is shown that there is a will, can it appear that there is a renunciable executorship. The real nature, design and operation of a caveat, are simply to suspend the act of probate until an investigation of the validity of the instrument may be had before the competent tribunal. It seems to me not difficult to reconcile the denial of the existence of a will, with a willingness to serve as executor if a will exists and is established. If a legatee file a caveat and resist the proof of the will, he does not thereby waive or renounce his legacy, nor preclude himself from demanding or receiving it, if the will is established. John S. Maxwell may, without incongruity, by means of the caveat, stay the proof of the will until an examination is had, and even resist the proof of the instrument, and yet, if the proper tribunal declares it to be a legal will, take on himself the execution of it.

[In the matter of the application of John S. Maxwell for letters, &c.]

The second objection to the application is founded on the terms of the decree; which, after declaring the instrument to be the will of the decedent, and as such entitled to probate, directs that letters testamentary be issued " to the *surviving executor*," thereby meaning, as we learn from the title of the decree, William H. Sloan.

There is nothing in the language of the decree to exclude in terms the present application; and being so, there is nothing in the nature of such a decree to produce this effect; for we have seen, that where several executors are named, the issuing of letters testamentary to one of them does not preclude a similar act subsequently done in respect to the others. And even if this may not be done here after a renunciation or refusal, yet no doubt, I think, can exist that it may be done where there is an omission to claim to be introduced into them when first issued, without such actual renunciation. Every grant of letters must be on an order or decree made or supposed to be made.

Upon the argument, the counsel in opposition to the claim, insisted on the oath to be taken by the executor, that the testator was of sound and disposing mind and memory, as proof, if not of a legal obstacle, at least of the impropriety of this application by one who had impugned the will on the ground of incapacity in the testator. But the ordinary form of the oath administered to an executor does not contain the supposed clause. It avers, indeed, that the will is the true last will and testament of the decedent. And there seems no inconsistency now in saying so, since the decree of the prerogative court has established it to be such. But I do not apprehend it requisite, or even proper, to insert that clause in the oath of the executor, where a decree for probate has been made on an appeal, in the prerogative court, however apt and proper it may be thus to verify the instrument when the letters testamentary are granted without contest on the production of it to the surrogate. At present the oath required needs only to extend to the faithful discharge of the office or trust.

Upon the whole, I can discover no legal impediment to the application, and therefore most respectfully recommend to his ex-

cellency the governor and ordinary, to grant letters testamentary to John S. Maxwell.                    CHARLES EWING,

    Feb. 6, 1832.                    Chief Justice Supreme Court.

Decree granting letters testamentary, pursuant to the recommendation contained in the opinion.